IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN FELDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:11-cv-737-BN |
| | § | |
| REBECCA BLANK, Acting Secretary, | § | |
| United States Department of Commerce, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* civil action for employment discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §2000e, *et seq.*; Dkt. No. 2. Defendant Rebecca Blank, Acting Secretary, United States Department of Commerce, Census Bureau ("Defendant"), filed a Motion for Summary Judgment. *See* Dkt. No. 49. Plaintiff Kevin Felder has not filed a response, and his time for doing so has passed; the motion for summary judgment therefore is now ripe for consideration.

**Factual Background**

Plaintiff began working for Defendant as an Assistant Manager for Recruiting ("AMR") in the Dallas Early Local Census Office on October 14, 2008. *See* Dkt. No. 51 (Appendix in Support of Defendant's Motion for Summary Judgment) ("App.") at 16, 148-49. As AMR, Plaintiff's duties included managing the recruitment and testing of applicants, preparing a recruitment plan to ensure an adequate numbers of qualified applicants are available for selection, and assisting the Local Census Office Manager

("LCOM") to develop and maintain good public relations, among other responsibilities. *See id.* at 29, 30, 95. Plaintiff's first line supervisor was LCOM Rita Williams, who is African-American. *See id.* at 16-17, 94, 95. Plaintiff's second-line supervisor was Area Manager William Aston, and his third-line supervisor was Rosa Estrada. *See id.* at 17. Plaintiff received training and detailed guidelines concerning his position and job duties through classroom training, manuals, memoranda, briefing sessions, and on-the-job training. *See id.* at 140-41, 149-51.

On his first day of employment, Aston allegedly introduced Plaintiff at a training session as the "new boy." *Id.* at 17, 162. Aston denies calling Plaintiff "boy" or the "new boy." *Id.* at 152. Instead, he explained that it is his common practice at training sessions to say something like "alright boys and girls, we are going to school now." *Id.*

Soon after his first day on the job, Plaintiff began receiving counseling, verbally or in writing, for various incidents concerning his work performance and/or conduct. *See id.* at 96. On October 22, 2008, Williams verbally counseled Plaintiff following a verbal altercation with an applicant. *See id.* at 45, 97. Williams advised Plaintiff to be careful of his tone when talking to applicants and to exhibit professionalism and patience at all times. *See id.* at 45-46. Additionally, on October 22, 2008, Plaintiff was counseled concerning a testing session that he conducted, where three applicant folders, containing personally identifiable information ("PII"), were determined to be missing. *See id.* at 18, 34-35, 96, 105, 152.

On November 17, 2008, Williams emailed Plaintiff to instruct him that he needed to communicate where he was when he was out of the office testing and/or

recruiting. *See id.* at 31. Williams also advised Plaintiff that the time off that Plaintiff had requested for November 25, 2008 could not be approved because he was scheduled to train recruiting assistants at the same time. *See id.* She explained that requested time off is not automatically approved and that she must take the Recruiting Department's training schedule into account prior to approving any leave requests. *See id.* She clarified the Census Bureau's policy that compensatory time must be pre-approved and recommended that she and Plaintiff discuss the policy further so that there would not be any further miscommunications or misunderstandings. *See id.* Williams also indicated a concern that she had with the testing procedures that Plaintiff used. *See id.*

On November 18, 2008, Williams verbally counseled Plaintiff regarding his work performance and his failure to follow the training script verbatim, as required, and being unreachable for extended hours while out of the office during normal duty hours. *See id.* at 47-55; *see also id.* at 42, 48.

Also on November 18, 2008, Plaintiff was counseled verbally and in writing regarding his work performance by Area Manager Aston regarding (1) Plaintiff's being unavailable and unreachable during normal duty hours; (2) Plaintiff's failure to maintain control of PII; (3) Plaintiff's touching, singling out, and implying that certain female job applicants were going to be hired; and (4) Plaintiff's failure to arrive thirty minutes prior to the beginning of testing sessions in order to prepare for the session. *See id.* at 32-36, 154. Aston allegedly told Plaintiff that he was the "weakest link" in getting work accomplished for his area. *See id.* at 19. Aston denies calling Plaintiff the

3

"weakest link" or a "clock watcher." *See id.* at 152. Also present for the counseling session between Aston and Plaintiff were Williams and Regional Technician Suzanne Umberger. *See id.* at 100, 154. Plaintiff alleges that he asked for a personnel representative to be present during the meeting but that Aston denied the request. *See id.* at 19. Aston, Williams and Umberger all dispute that Felder requested to have a personnel representative present, and Williams testified that, if he had, Defendant would have followed agency protocol in responding to the request. *See id.* at 97, 108, 142, 154. During the meeting, Felder stated that he felt like he had been targeted and that he felt threatened. *See id.* at 100, 142. Aston informed Plaintiff that he had the right to file an EEO complaint and reminded him of the grievance process. *See id.* at 100, 108.

After that meeting, but also on November 18, 2008, Plaintiff met with Assistant Regional Census Manager Rosa Estrada to discuss the way that he was treated by his supervisors, particularly Aston. *See id.* at 20, 142. He alleges that he told her that he planned to file an EEO complaint concerning his treatment and that she asked him to hold off until she could talk to Aston to try to work things out. *See id.* at 20. Estrada denies that Plaintiff mentioned his intent to file an EEO complaint. *See id.* at 142.

On November 24, 2008, Williams verbally counseled Plaintiff regarding his work performance and his failure to prepare for training for newly-hired recruiting assistants, his failure to prepare the classroom for training, his failure to return from lunch on time, and his failure to follow the procedures in the recruiting training manual. *See id.* at 53, 54.

4

On November 26, 2008, Williams verbally counseled Plaintiff concerning his failure to return to the office after a 1:00 p.m. testing session and failure to contact his supervisor to inform of his location despite Plaintiff's being counseled and instructed to do so by his supervisors on November 17 and November 18. *See id.* at 55, 56.

On December 4, 2008, Plaintiff was terminated from his position for failing to carry out orders or assignments, inefficiency, misconduct, failing to follow procedures in the protection of PII, and conduct demonstrating untrustworthiness or unreliability. *See id.* at 37, 38. Plaintiff was terminated by Gabriel Sanchez, Regional Director. *See id.* at 38. Williams was the recommending official on Plaintiff's termination, and Aston was the concurring official. *See id.* at 97, 98, 142, 155. At that time, Aston again reminded Plaintiff of his right to file an EEO complaint. *See id.* at 100-01.

On December 5, 2008, Plaintiff sought EEO counseling alleging that Defendant discriminated against him on the basis of race and retaliation, that he was targeted and treated in a derogatory manner by his Area Manager on a regular basis, and that this treatment ultimately led to his termination. *See id.* at 144. Plaintiff filed a formal EEO complaint on January 15, 2009. *See id.* at 1-4. The following allegations were accepted and investigated:

> [Plaintiff] alleges that due to his race (African American) and in retaliation (for his opposition of discriminatory practices), he was subjected to a hostile work environment and acts of disparate treatment. He cites the following:

> 1.    He was subjected to disparaging remarks. Examples include:

> •      On October 14, 2008, Bill Aston called him "boy."

- On October 22, 2008, he was verbally reprimanded for a violation concerning his handling of personally identifiable information.

- On November 18, 2008, Aston called him the "weakest link."

- Aston constantly told him, "I did not hire you, I don't know anything about you."

2.    He was denied a personnel representative by Bill Aston during a disciplinary meeting in November 2008.

3.    The agency discouraged him from filing an EEO Complaint.

4.    He was required to work without breaks and without lunch and was not compensated for the time worked.

5.    He was not allowed to develop recruitment plans, which was part of his job responsibilities.

6.    He was terminated from his term position.

*Id.* at 5; *see also id.* at 5-14, 15-16.

On April 11, 2011, Plaintiff filed this action alleging he was discriminated against on the basis of his race (Plaintiff is African American) and in retaliation for opposing discriminatory practices when he was subjected to a hostile work environment and acts of disparate treatment. *See* Dkt. No. 2. According to Plaintiff's Complaint, he was "subjected to racial slurs, innuendos, disparate treatment, hostile work environment and retaliation for reporting such treatment and expressing a desire to file an EEOC Complaint[.] I was retaliated against after reporting the racial slurs and disparate treatment and then I was fired. I also was made to work without lunch/break." *Id.* Plaintiff asserts that his lawsuit is based on violations of Title VII of

6

the Civil Rights Act of 1964. *See id.*

Defendant filed a Motion for Summary Judgment on May 24, 2013. *See* Dkt. No. 49. Defendant asserts that she is entitled to judgment as a matter of law because Plaintiff fails to establish an essential element of each of his claims; because Defendant had legitimate, nondiscriminatory reasons for her decisions and actions; and because Plaintiff cannot prove that Defendant's reasons for her actions were a pretext for discrimination or retaliation. *See id.;* Dkt. No. 50 (Memorandum of Law in Support of Defendant's Motion for Summary Judgment). Plaintiff's response to Defendant's Motion for Summary Judgment was due on June 24, 2013. *See* Dkt. No. 52. Plaintiff has not filed a response, however, and Defendant's motion is now ripe for consideration.

## Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

7

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th

Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

Plaintiff has not responded to Defendant's motion for summary judgment. Plaintiff's failure to respond does not permit the Court to enter a "default" summary judgment. But the Court is permitted to accept Defendant's evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). Moreover, Plaintiff's failure to respond means that he has not designated specific facts showing that there is a genuine issue for trial on any of his claims. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Here, the pleadings are not verified, and, therefore, Plaintiff has presented no summary judgment evidence, and, for that reason, too, the Court is allowed to accept Defendant's facts as undisputed. *See Estate of Newton ex rel.*

9

*Newton v. Grandstaff*, No. 3:10-cv-809-L, 2012 WL 3013929, at *2 (N.D. Tex. July 20, 2012). The fact that Plaintiff is litigating this case *pro se* does not alter this rule, because

> [t]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require pro se parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.

*Bookman*, 945 F. Supp. at 1005; *accord Johnson v. Herzog Transit Servs., Inc.*, No. 3:11-cv-803-D, 2013 WL 164222, at *1-*2 (N.D. Tex. Jan. 15, 2013).

### Analysis

I.   <u>Plaintiff has failed to establish an essential element of his discrimination claim.</u>

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). To establish a *prima facie* case of employment discrimination, Plaintiff must establish that he: (1) is a member of a protected class; (2) was qualified for the position; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees outside the protected group. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curium).

Employment discrimination claims involving circumstantial evidence are

analyzed under the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Under that framework, the employee's establishment of a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *See Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252, 255 (1981)). If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The burden is one of production, not persuasion, and involves no credibility assessment. *See Reeves*, 530 U.S. at 143 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). If the employer carries its burden, the inference created by the *prima facie* case drops out of the picture, *see Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000), and the burden shifts back to Plaintiff, who must prove that the legitimate reasons offered by the defendant were not its true reasons but, rather, were a pretext for discrimination, *see Reeves*, 530 U.S. at 142. A plaintiff may demonstrate pretext by showing disparate treatment or "by showing that the employer's explanation is false or unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Defendant does not dispute that Plaintiff is a member of a protected class, was qualified for the position, or was replaced by someone outside the protected class. *See* Dkt. No. 50 at 16. But Defendant contends that Plaintiff cannot establish the other two elements of his discrimination claim because he was not subject to an adverse

employment action other than termination, which was for legitimate, non-discriminatory reasons, and that similarly-situated employees were not treated more favorably. *See id.*

A.   <u>Plaintiff was not subject to adverse employment action other than termination.</u>

For Title VII discrimination claims, adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. *See McCoy*, 492 F.3d at 559; *Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009). There is no evidence, other than Plaintiff's conclusory assertions, to show that any ultimate employment decisions flowed from the remarks or actions that Plaintiff asserts in support of his discrimination claim. *See McCoy*, 492 F.3d at 559 (holding unfavorable feedback or performance review, without an additional showing of loss to Plaintiff's compensation, duties, or benefits, is not an adverse employment action); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism, oral threats, and abusive remarks are not adverse employment actions). Likewise, there is no evidence that before his termination, Plaintiff suffered a loss in compensation, duties, benefits, job title, grade, hours, or salary.

B.   <u>Plaintiff was not treated differently from similarly-situated employees.</u>

For a plaintiff to show disparate treatment, he must demonstrate that the misconduct for which he was discharged was nearly identical to that engaged in by an employee who is not within his protected class and whom the company retained. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (citations omitted). Plaintiff "must show 'nearly identical' circumstances for employees to be considered

12

similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (quoting *Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004)).Plaintiff has identified three Caucasian employees who he alleges were similarly-situated and treated more favorably than him because of his race: Marty Howard, Assistant Manager for Technology in the Dallas office; Mike Dryden, AMR at the Plano ELCO; and Delton Simmons, Assistant Manager for Field Operations in the Dallas Office. *See* App. at 21, 23, 24, 121, 131, 133.

Plaintiff alleges Dryden, who held the same AMR position as Plaintiff, received favorable treatment because, unlike Plaintiff, Dryden received classroom time and training before doing any testing or recruiting and because Dryden was allowed to select his own recruiting assistants and develop his own recruiting plan. *See id.* at 24. But the summary judgment evidence shows that all AMRs received the same training, which included on-the-job training, review of personnel and training manuals, observation time, and coaching. *See id.* at 151. The evidence also shows that recruiting assistant selections and assignments were computer generated, not personally selected. *See id.* at 151. All AMRs in the region were required to complete a recruiting plan, and Plaintiff was directed to complete one by a deadline, but he failed to do so. *See id.* at 29, 153.

Further, even though Dryden held the same AMR position as Plaintiff, he worked at a different Local Census Office and reported to a different supervisor. *See id.* Employees with different supervisors or whose employment status is determined by different persons are not similarly situated. *See Lee v. Kansas City S. Ry. Co.*, 574

13

F.3d 253, 259 (5th Cir. 2009). Plaintiff and Dryden were not similarly situated.

Plaintiff alleges simply that Simmons "made mistakes but nothing was done – he didn't get reprimanded – hostile test taker." *Id.* at 122, 133. There is no evidence concerning what mistakes Simmons allegedly made, much less whether they were nearly identical to those made by Plaintiff. Moreover, even though Plaintiff and Simmons were both located in the Dallas office and had the same supervisor, their job titles and job responsibilities were not the same. *See id.* at 151. Employees who have different work responsibilities are not similarly situated. *See Lee*, 574 F.3d at 259. Plaintiff and Simmons were not similarly situated.

Plaintiff alleges that Howard was allowed to take time off with no objection but that Plaintiff was denied time off each time it was requested. *See* App. at 23. There is evidence that Plaintiff requested and was denied time off twice. Plaintiff requested time off on November 18, 2008, which was denied because Plaintiff was required to attend counseling with Aston. *See id.* at 23. Plaintiff requested time off on November 25, 2008, which was denied because his requested leave was at a time when he was scheduled to conduct a testing session. *See id.* at 42, 49, 57. There is no evidence in the record concerning Howard's time off or whether Howard made any request for time off that was granted under circumstances nearly identical to those in which Defendant's requests were denied. Moreover, Plaintiff and Howard did not have the same job title or job responsibilities, and they were not assigned to work from the same location. *See id.* at 151. Employees who work in different locations or for different divisions of a company and those who have different work responsibilities are not similarly situated.

14

*See Lee*, 574 F.3d at 259. Plaintiff and Howard were not similarly situated.

C.    <u>Defendant had legitimate, non-discriminatory reasons for its actions.</u>

Defendant gave Plaintiff six reasons for his termination: (1) Plaintiff was consistently not available during normal duty hours; (2) Plaintiff led a testing session where three applications went missing and Plaintiff left before the session was complete; (3) Plaintiff had inappropriate physical contact with female applicants and told these applicants that they should receive a call concerning employment; (4) Plaintiff failed to arrive on time to testing locations; (5) Plaintiff failed to prepare and maintain a testing schedule; and (6) Plaintiff failed to ensure that personnel were at scheduled testing sites. *See* App. at 37-38 (termination letter). Defendant explained that Plaintiff was being terminated for failure to carry out orders or assignments, inefficiency, misconduct, failure to follow procedures in the protection of PII, and conduct demonstrating untrustworthiness or unreliability. *See id.*

According to the summary judgment evidence, Plaintiff's performance was consistently deficient throughout his approximate six weeks of employment, he was counseled verbally or in writing at least six times concerning his poor performance and unprofessional conduct, and his failure to meet the requirements of his position despite repeated instruction formed the basis of the decision to terminate his employment. *See id.* at 43, 44, 96, 97, 147, 154, 155). Job performance is a legitimate, non-discriminatory reason for termination. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

In addition to termination, Plaintiff alleges that he suffered an adverse

15

employment action because he was not compensated for time accrued on two separate occasions. *See id.* at 20. On November 7, 2008, Williams pre-approved Plaintiff for two hours of compensatory time and told him that working additional hours without approval would be a violation of agency policy. *See id.* at 98, 99. Plaintiff alleges that he worked for five hours on that day and demanded to be compensated. *See id.* at 20. Plaintiff was paid only for the two pre-approved hours of overtime. *See id.* at 20, 98, 99. On November 14, 2008, Plaintiff claimed compensatory time for working six hours on a Sunday. *See id.* Plaintiff was not compensated for the six hours because they had not been pre-approved. *See id.* at 98, 99, 153, 154. Plaintiff had been counseled on the compensatory time policy, which required pre-approval. *See id.* at 42, 49, 98-99, 153, 154. The summary judgment evidence shows that Defendant's denials of Plaintiff's requests for compensatory time or overtime were the result of Plaintiff's failure to follow agency policy and not based on his race.

D.     <u>There is no evidence of pretext.</u>

There are references throughout the summary judgment record to Plaintiff's subjective belief that he was discriminated against but no evidence that Defendant's proffered legitimate, non-discriminatory reasons for its actions, including termination, were a pretext for racial discrimination or retaliation. Plaintiff believes that his race influenced the way that he was treated, particularly by Aston, and concludes that, if he were white, Aston would not have been as hard on him. *See id.* at 17, 19, 22. For example, he thought that Aston's statement that he was "the 'weakest link' in getting work accomplished for [his] area" was "most likely" based on his race. *Id.* at 19. He also

16

believes that he was terminated because he was African American and that Aston and others wanted an Anglo to have his position. *See id.* at 24. Furthermore, Plaintiff believes that Estrada pushed for his termination after he told her that he planned to file an EEO complaint. *See id.* at 22.

In his deposition, Plaintiff testified that he had strong feelings and beliefs, but no proof, that racial discrimination and retaliation were involved in Defendant's decisions to discipline and terminate him. *See id.* at 176-89, 191-98. Subjective beliefs do not present genuine issues of material fact sufficient to survive summary judgment. *See Brackens v. Ennis State Bank,* 252 F.3d 434, 2001 WL 360647, at *3 (5th Cir. 2001) (not selected for publication) (citing *Duffy v. Leading Edge Prods. Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) ("[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1991) (observing that subjective beliefs alone cannot establish a claim of discrimination)).

II.   <u>Plaintiff has failed to establish an essential element of a hostile work environment claim.</u>

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To establish a *prima facie* case for a racially hostile work environment under Title VII, Plaintiff must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment;

and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See id.* Where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four elements. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). "For harassment on the basis of race to affect a term, condition, or privilege of employment ... it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citations and internal quotation marks omitted). To determine whether a hostile work environment existed, the Court must consider "the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted).

Plaintiff alleges he was subjected to racial slurs, innuendoes, disparaging remarks, and discriminatory counseling. *See* App. at 17, 18, 201. Specifically, he claims that Aston, his second-in-line supervisor, called him the "new boy" on his first day of work, called him the "weakest link" during a counseling session, and repeatedly told him "I did not hire you, I don't know anything about you." *Id.* at 15-19. Plaintiff also claims that, during counseling sessions, he was falsely accused of various performance and conduct infractions, including inappropriate physical contact while conducting training. *See id.* at 18-19. And Plaintiff contends that he was required to work without breaks, without lunch, without overtime compensation, and he was not allowed to

develop recruitment plans, which was a part of his job responsibilities. *See id.* at 20-21.

Plaintiff has not established by competent summary judgment evidence that the alleged harassment was based on race or affected a term, condition, or privilege of employment. While the term "boy" could be construed as having racial connotations, the terms "new boy" and "weakest link" and the statement "I didn't hire you, I don't know anything about you" do not. Moreover, the terms "boy" or "new boy" and "weakest link" were each made only once. The mere utterance of an ethnic or racial epithet that engenders offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). And common workplace occurrences within an employer's discretion, such as supervising and reprimanding employees, scrutinizing employee work, requiring pre-approval for compensatory time, and requiring employees to conduct themselves in a professional manner, do not rise to the level of severe and pervasive conduct necessary to show a hostile work environment. *See McCoy*, 492 F.3d at 557-58.

III.   Plaintiff has failed to establish an essential element of a retaliation claim.

Plaintiff alleges that he was retaliated against when he was fired after he reported the alleged mistreatment by his supervisors, particularly Aston, to Estrada. *See* App. at 20. At that time, Plaintiff claims that he told Estrada that he planned to file an EEO complaint but that she discouraged him from doing so, asking him to wait so she could talk to Aston to "try to work things out." *Id.* Plaintiff did not hear from

19

Estrada again. *See id.* Estrada concurred in the recommendation to terminate Plaintiff, and Plaintiff alleges that "it is likely that Rosa Estrada pushed for my termination after I told her that I was going to file an EEO complaint over my treatment." *Id.* at 22.

To establish a *prima facie* case of unlawful retaliation under Title VII, Plaintiff must show that (1) he participated in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) there is a causal link between the protected activity and the adverse employment action. *See McCoy*, 492 F.3d at 556. The *McDonnell Douglas* burden shifting framework applies to retaliation claims. *See id.*

Even if the close timing between Defendant's threat and his termination were sufficient to establish the causal link between his threat to file an EEO complaint and his termination required to make out a *prima facie* case, Defendant has offered a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, and Plaintiff therefore "must establish that his ... protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454-55 (5th Cir. 2013). In order to avoid summary judgment, Plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

Plaintiff has failed to do so. As discussed above, the summary judgment evidence establishes that Plaintiff was terminated because of his poor job performance, and there is no evidence that Defendant's reasons for Plaintiff's discharge were pretextual.

There is also evidence that Aston actually counseled Plaintiff twice about his right to file an EEO complaint. There is no evidence, other than Plaintiff's subjective beliefs and feelings, to support his retaliation claim.

## Conclusion

Defendant's Motion for Summary Judgment [Dkt. No. 49] is GRANTED, and this case is DISMISSED with prejudice.

DATED: December 16, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE